IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT MICHAEL SAVAGE, #1595108 | § | |
| VS. | § | CIVIL ACTION NO. 6:10cv483 |
| DEBRA BROWN, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Robert Michael Savage, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on September 21, 2010. On January 18, 2011, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Administrator Ginger Lively, Warden Dwayne Dewberry and Nurse Carrie Hucklebridge testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The Plaintiff stated that his problems began when inmate Ivery T. Williams named him as a witness in a grievance filed against Defendant Debra Brown, who is the manager of the laundry. The Plaintiff observed Brown lock Williams inside of the laundry and call him a snitch on July 2, 2010. When Brown discovered that the Plaintiff was listed as a witness in the grievance, she engaged in a series of retaliatory acts. She demoted him from a SSI position to a laundry exchange position. His work hours changed with the new position. Instead of working from 8 a.m. until Noon, his new job required him to work from 3 a.m. to 11 a.m. six days a week. He added that other inmates working the same job were not required to work six days a week. The Plaintiff filed a grievance, which was attached to the complaint. Warden Wheat denied the Step 1 grievance on July 12, 2010. In his response, Warden Wheat stated that the work hours were within policy and procedure guidelines. Cheryl Lawson denied his Step 2 grievance on August 16, 2010. She deferred to the explanation provided by Warden Wheat.

The Plaintiff testified that he was one of several inmates who complained about discrepancies in the work hours among inmates. Brown responded by demoting him again. This time, his job was changed from the laundry to the showers. The Plaintiff testified that Brown was the manager of both the laundry and the showers. He was assigned to work in the showers despite the fact that he had a work restriction from being assigned to a job in high heat. He noted that the restriction was removed at one point in time, but he was not sure when.

Brown also instructed Officer Goodson to give the Plaintiff a disciplinary case for using state property without authorization. More specifically, he used a push broom without authorization. The Plaintiff testified that he pled guilty when the disciplinary hearing officer told him that he was going to receive a verbal reprimand. The Plaintiff attached the Disciplinary Report and Hearing Record

to his original complaint. The offense occurred on June 9, 2010. The Plaintiff received notification of the charges on June 16, 2010. A disciplinary hearing was conducted on the following day. The Plaintiff specified at the hearing that he did not know that he was not supposed to use the broom. He pled guilty and was given a verbal reprimand.

The Plaintiff complained about Brown to Defendant Chip Satterwhite, who was in charge of enforcing the Safe Prison Act. More specifically, he submitted an I-60 asking for a job change. Satterwhite, however, failed to act upon the request. Satterwhite indicated that he would allow the matter to be handled through the grievance process. The Plaintiff complained that Satterwhite did not initiate a life endangerment study.

Brown somehow received the I-60 asking for a job change. She told the Plaintiff that he was not going anywhere. The Plaintiff testified that he stopped going to work because he feared for his safety. He received a major disciplinary case for failing to go to work. His custody level was reduced and he was assigned to work in the fields. The Plaintiff testified that Defendant Major Smith ran the Unit Classification Committee (UCC) hearing. He initially gave the Plaintiff a job change to the kitchen. On the following day, the Plaintiff was summoned back to Major Smith, who told him that his classification had been reduced from a G2 status to a G4 status. Major Smith indicated that he did not know where the Plaintiff would be assigned to work. The Plaintiff was then assigned to work in the fields. He was assigned to work in the fields even though he had a medical restriction not to assign him to a job in direct sunlight. The Plaintiff testified that he believes that the second meeting with Major Smith was prompted by a request from Brown.

The Plaintiff testified that he sued Wardens Wisener and Wheat for acting in bad faith. They denied his grievances without investigating his complaints. The Plaintiff testified that he is a

MHMR patient. He has been diagnosed as Bi-Polar, which led medical personnel to include no high heat or sunlight restrictions regarding his job assignments. He is on medication for his condition. His problems associated with being Bi-Polar have been resolved by medication. He again complained that he was assigned to work positions that were contrary to his medical restrictions.

Warden Dewberry testified under oath that the major disciplinary case resulted in a drop in the Plaintiff's custody status from G2 to G4. He noted that G2 is comparable to general population under the old classification scheme, while G4 is comparable to medium custody.

Nurse Hucklebridge testified under oath from the Plaintiff's medical records. She noted that restrictions were placed on the Plaintiff's medical classification when he first arrived at the prison system due to his medical condition. The restrictions were removed after he arrived at the Coffield Unit. The restrictions were removed because they were unnecessary in light of the type of medication that was being prescribed to the Plaintiff.

Ginger Lively testified under oath that the Plaintiff exhausted his grievances regarding his work hours before the present lawsuit was filed. He did not, however, exhaust his administrative remedies regarding his remaining claims until after the lawsuit was filed. He had filed grievances on the remaining claims before the lawsuit was filed, but the decisions were not issued until after the lawsuit was filed.

It is again noted that the Plaintiff gave the Court permission to review his prison records. Classification records reveal that the medical restrictions regarding working in direct sunlight and temperature extremes were deleted on March 11, 2010. The classification records included documents from a number of disciplinary proceedings. The Plaintiff received a disciplinary case for refusing to turn out for his work assignment in the laundry, Case Number 20100162630, on February

4

11, 2010. On February 20, 2010, he received a verbal reprimand. The incident involving the unauthorized use of the push broom occurred on June 9, 2010. The Plaintiff received two disciplinary cases on July 21, 2010. The first involved being out of place on July 18, 2010, in Case Number 20100326406. On July 22, 2010, he was found guilty and his punishment was loss of commissary privileges for 15 days. The second charge was for failing to turn out for work on July 17, 2010, in Case Number 20100326214. On July 22, 2010, he was found guilty and lost recreation privileges for 15 days. The Plaintiff received his first case rated as a major case on July 29, 2010. It concerned the Plaintiff leaving his work assignment in the showers without permission on July 26, 2010, in Case Number 20100336965. On August 3, 2010, the Plaintiff was found guilty. His punishment consisted of the loss of commissary privileges for 30 days, cell restrictions for 30 days and a reduction in classification from S3 to L1. On August 3, 2010, the Plaintiff received another major disciplinary case for refusing to turn out for work in the showers on July 30, 2010, in Case Number 20100340190. During the investigation, he stated that he had filed a life endangerment complaint against Brown. On August 4, 2010, the Plaintiff was found guilty. His punishment consisted of the loss of commissary privileges for 15 days, cell restrictions for 15 days and a reduction in classification from S3 to S4. He received another failure to turn out for work on August 2, 2010, in Case Number 20100344078. On August 5, 2010, he was found guilty. His punishment consisted of the loss of commissary privileges for 30 days, cell restrictions for 30 days, and a reduction in classification from L1 to L2. After this lawsuit was filed, he received two more disciplinary cases for failing to turn out for work.

The first UCC record submitted at the *Spears* hearing involving the Coffield Unit was dated August 5, 2010. The Plaintiff's custody level was kept at G2. He was assigned to food services.

5

On the following day, the UCC met again in light of the Plaintiff's disciplinary case for refusing to turn out for work in Case Number 20100340190. His custody level was lowered to G4. He was assigned to work in the fields. The entry was signed by "CS," presumably Captain Smith. On October 20, 2010, the UCC met due to Plaintiff's next disciplinary case for refusing to turn out for work. His custody status was kept at G4 and his job assignment in the fields was retained. The same result occurred in another UCC meeting on October 29, 2010, after the last failing to turn out for work disciplinary case.

Numerous grievance records were submitted at the *Spears* hearing. The first relevant grievance was Grievance Number 2010187935 filed on July 2, 2010. The Plaintiff complained about the work hours assigned to him by Brown. As was previously noted, this grievance was attached to the original complaint. The Step 1 grievance was denied on July 12, 2010. The Step 2 grievance was denied on August 16, 2010.

The Plaintiff filed a retaliation claim against Brown, which included a request for a life endangerment study, on July 29, 2010, in Grievance Number 2010206033. Warden Wisener denied the grievance on August 9, 2010. In his response, Wisener stated that Brown denied retaliating against the Plaintiff and that Officer Goodson reported that he had not written an untrue disciplinary case. The Step 2 grievance was denied on October 13, 2010.

The Plaintiff complained about being assigned to work in the fields in light of his medical restrictions in Grievance Number 2010214602 on August 11, 2010. Warden Wisener denied the grievance on August 26, 2010. He noted that the Plaintiff did not have any medical restrictions. He added that Brown denied retaliating against the Plaintiff for using the grievance process. The grievance was denied for lack of evidence. The Step 2 grievance was denied on November 8, 2010.

The Plaintiff complained about the failure to follow life endangerment procedures and his disciplinary cases in Grievance Number 2010220980 on August 20, 2010. Warden Wisener denied the grievance on August 24, 2010. The Step 2 grievance was denied on November 8, 2010.

The Plaintiff filed a Step 1 grievance about being demoted to G4 and being assigned to the fields on September 13, 2010, in Grievance Number 2011007455. Warden Wisener responded on September 22, 2010. He noted that the reduction in custody level and new job assignment were the result of the disciplinary cases. The changes were characterized as being appropriate. The Step 2 grievance was denied on November 12, 2010.

## Discussion and Analysis

In analyzing the Plaintiff's various claims, the Court initially notes that federal courts are courts with limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress. *Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006). The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to federal violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights lawsuit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). For example, there is a constitutional basis for a retaliation claim, but there is no constitutional claim based on a prison official acting in bad faith.

The Plaintiff's primary claim is that he was the victim of retaliation. He asserted that the changes in his job assignment were the product of retaliation. The acts of retaliation began when inmate Ivery T. Williams listed him as a witness in a grievance. The Plaintiff stated in the complaint

7

that he witnessed events that occurred on July 2, 2010. Brown retaliated against him by instructing other officers to write disciplinary cases against him, by demoting him and giving him less desirable work hours.

To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). Officials may not, for example, "retaliate or harass an inmate . . . for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). *See also Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). The inmate must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from exercising his constitutional rights." *Morris v. Powell*, 449 F.3d at 686. In *Morris*, the Fifth Circuit held that an allegedly retaliatory job transfer from the commissary to the kitchen was a *de minimis* act, while a transfer to a more dangerous unit was a sufficiently adverse retaliatory act. *Id.* at 687.

In the present case, the Plaintiff alleged that he was demoted after he was named as a witness in Ivery Williams' grievance. The allegation fails to state a basis for a retaliation claim. In particular, the Plaintiff did not personally engage in a constitutional right. Moreover, the alleged retaliatory act of demoting the Plaintiff was *de minimis* in light of the Fifth Circuit's decision in *Morris v. Powell*. His complaint about his new work hours likewise involved a *de minimis* act.

The Plaintiff also complained about receiving the disciplinary case for using state property without authorization involving the push broom. The seminal case involving allegations of retaliation relating to a disciplinary case is *Woods v. Smith*, *supra*. The Fifth Circuit initially rejected an argument that an inmate may not bring a retaliation claim involving a disciplinary case unless he first established that the underlying disciplinary proceedings were ultimately terminated in his favor. 60 F.3d at 1164. On the other hand, the following excerpt from a Fourth Circuit decision was cited in stressing that prison officials must be given wide latitude in the control and disciplining of prisoners:

> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

*Id.* at 1166 (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995)). Trial courts were directed to carefully scrutinize such retaliation claims. *Id.* An inmate must "establish that but for the retaliatory motive the complained of incident - such as the filing of the disciplinary reports at bar - would not have occurred." *Id.* "Mere conclusory allegations of retaliation will not withstand a summary judgment challenge." *Id.* He must show "a chronology of events from which retaliation may plausibly be inferred." *Id.* Finally, the Fifth Circuit held that "[a]lthough we decline to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate." *Id.*

In the present case, the disciplinary infraction involving the broom occurred on June 9, 2010. The charges were filed on June 16, 2010. The Plaintiff specified in the complaint that he observed the incident involving Ivery Williams on July 2, 2010. As such, the Plaintiff failed to set forth a

chronology of events from which retaliation may plausibly be inferred. Moreover, the punishment consisting of nothing more than a verbal reprimand cannot be viewed as an actionable retaliatory act. In the original complaint, the Plaintiff also complained about receiving a disciplinary case for failing to turn out for work on April 25, 2010. Once again, his punishment consisted of nothing more than a verbal reprimand. The retaliation claim fails for the same two reasons. Furthermore, with respect to the disciplinary case involving the push broom, the Plaintiff admitted that he used the broom. He stated that he was unaware that using the broom violated a rule. Nonetheless, he cannot show that "but for" a retaliatory motive, he would not have received a disciplinary case for using the push broom. Overall, the Plaintiff's retaliation claims against Brown fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The retaliation claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also claimed that Brown harassed him. Once again, potentially meritorious civil rights claims must involve abuses of governmental power that rise to a constitutional level. Verbal harassment, without more, cannot amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). The Fifth Circuit has made the following observation:

> [I]n the Eighth Amendment context, our circuit has recognized as a general rule that "mere threatening language and gestures of a custodial officer[r] do not, even if true, amount to constitutional violations". *McFadden*, 713 F.2d at 146 (quoting *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okla. 1977); *accord Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.) (the use of words, no matter how violent, does not comprise a § 1983 violation), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation under § 1983).

*Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995). The harassment claim should likewise be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff next alleged that Chip Satterwhite of the Safe Prisons Program failed to fulfill his duty to protect him when he filed a life endangerment claim. The responsibilities of the Safe Prisons Program Coordinator at a unit are listed in § II.B of TDCJ-CID's Safe Prisons Plan (Jan. 2005). The purpose of the position is to help inmates avoid sexual abuse at the hands of other inmates. The coordinators confirm and track extortionists, victims and predators. The focus of the program concerns inmates sexually abusing other inmates. The primary purpose of Satterwhite's job was not concerned with whether an employee was harassing and retaliating against an inmate. The Plaintiff misunderstood the purpose of Satterwhite's job.

The Court must add that the Plaintiff's focus on prison rules does not provide a basis for a potentially meritorious lawsuit. A violation of a prison regulation, without more, does not state a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). An assertion that prison officials failed to follow departmental regulations must, on its own merit, state a constitutional claim. *See Balli v. Haynes*, 804 F.2d 306, 308 (5th Cir. 1986). *See also Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) (The failure to follow regulations "may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation."). It is likewise well established that the mere violation of state laws does not necessarily infringe on rights secured by the Constitution. *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *McDowell v. Texas*, 465 F.2d 1342, 1346 (5th Cir.), *aff'd en banc*, 465 F.2d 1349 (5th Cir. 1971), *cert. denied*, 410 U.S. 943 (1973).

Nonetheless, when it comes to claims about safety, an inmate may have a basis for lawsuit under the Eighth Amendment. The standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002).

"[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In the present case, the Plaintiff has not shown that Satterwhite knew of and disregarded an excessive risk to his health or safety. The Plaintiff acknowledged that Satterwhite knew that the Plaintiff had filed a grievance against Brown and that he chose to allow the matter to be handled through the grievance process. The matter was investigated, and Warden Wisener denied the grievance. Satterwhite's act of deferring to the investigation pending before the unit warden was reasonable. The facts as alleged and developed do not state a basis for a potentially meritorious failure to protect claim against Satterwhite. The claims against Satterwhite fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against Satterwhite should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also sued Wardens Wisener and Wheat because they denied his grievances and failed to correct problems. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither warden participated in any alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of

the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

The Supreme Court recently held that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id.* As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010). The Fifth Circuit has not addressed the issue. The Plaintiff has not alleged facts showing that the wardens personally engaged in misconduct.

The Court would add that the Fifth Circuit has specifically rejected claims against supervisory officials based on the denial of grievances. *See Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prison and jail officials the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance

13

procedures. The claims against Wardens Wisener and Whet fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against the wardens should be dismissed pursuant to 28 U.S.C.§ 1915A(b)(1).

It is also noted that the Plaintiff sued the Texas Department of Criminal Justice - Correctional Institutions Division. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). The Texas prison system is immune from liability. *Ruiz v. Estelle*, 679 F.2d 1115, 1137 (5th Cir. 1982); *Pete v. Metcalfe*, 8 F.3d 214, 216 (5th Cir. 1993). The claims against the prison system are frivolous and should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The final defendant is Major Smith, who presided over UCC meetings that resulted in the lowering of the Plaintiff's custody level and a work assignment to the field force. Prison systems have broad discretion in the classification of inmates, and the federal courts will not interfere with classification decisions except in extreme circumstances. *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Young v. Wainwright*, 449 F.2d 338 (5th Cir. 1971). Inmates have neither a protectable property nor liberty interest in custodial classification. *Moody v. Baker*, 857 F.2d 256 (5th Cir.), *cert. denied*, 488 U.S. 985 (1988). Absent evidence of abuse, the classification of prisoners is a matter left to the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990). The Plaintiff does not have a basis for a civil rights claim against classification officials just because he disagrees with their classification decisions. *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995). He does not have a basis for a deliberate indifference claim about being assigned to the fields when his

medical restrictions did not forbid classification officials from assigning him to work there. *See Winston v. Stacks*, 243 Fed. Appx. 805, 806 (5th Cir. 2007). Moreover, he does not have a basis for a claim about being assigned to work in the fields because he has not shown that he was harmed due to his assignment to work in the fields. *Id.* The claims against Captain Smith fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against Smith should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

It is again noted that the Plaintiff stated he is a MHMR patient because he has been diagnosed as Bi-Polar. He alleged that his rights under the Americans with Disabilities Act (ADA) have been violated. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Plaintiff has not shown that he has been denied benefits of services, programs or activities due to his condition. He acknowledged that he has been given medication for his condition and that the problem has been resolved by the medication. He has not shown that his rights under the ADA have been violated. The ADA claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

As a final matter, the Court will address exhaustion of administrative remedies. The Plaintiff exhausted his administrative remedies only with respect to his work hours claim before he filed the lawsuit. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001).

The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court subsequently reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id.* at 83. The Supreme Court's most recent pronouncement on exhaustion was in *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Fifth Circuit has added, however, that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 389 (5th Cir. 2008).

The Plaintiff had exhausted only one claim before he filed the lawsuit. Even if his claims were not frivolous, his claims other than his work hours claim would have to be dismissed because he did not exhaust his administrative remedies before he filed the lawsuit. He filed the lawsuit prematurely. It is again noted that the only claim that was exhausted concerned work hours, which was frivolous. It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **27** day of **January, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE